IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA, )
)
Plaintiff, ) Judge Gaughan
) Cleveland, Ohio
vs. )
) Number 1:18CR184
LASHAWN DAVIS, )
)
Defendant. )

- - - - -

TRANSCRIPT OF PROCEEDINGS HAD BEFORE

THE HONORABLE PATRICIA ANNE GAUGHAN

JUDGE OF SAID COURT,

ON WEDNESDAY, MARCH 6, 2019

- - - - -

APPEARANCES:

For the Government: SCOTT C. ZARZYCKI, Assistant U.S. Attorney
801 West Superior Avenue
Cleveland, OH 44113
(216) 622-3600

For the Defendant: EDWARD G. BRYAN, ESQ., Federal Public Defender's Office - Cleveland
750 Skylight Office Tower
1660 West Second Street
Cleveland, OH 44113
(216) 522-4856

Official Court Reporter: Shirle M. Perkins, RDR, CRR
U.S. District Court
801 West Superior, #7-189
Cleveland, OH 44113-1829
(216) 357-7106

Proceedings recorded by mechanical stenography; transcript produced by computer-aided transcription.

WEDNESDAY SESSION, MARCH 6, 2019, AT 11:01 A.M.

THE COURT: Mr. Davis, you may approach the podium with counsel.

We are here in the matter of the United States of America versus Lashawn Davis, Case Number 18CR184. Present in court is Mr. Davis; is that correct, sir?

THE DEFENDANT: Yes, your Honor.

THE COURT: Represented by his attorney, Mr. Ed Bryan. On behalf of the Government, Mr. Scott Zarzycki.

MR. ZARZYCKI: Good morning, your Honor.

THE COURT: Good morning. And on behalf of Probation, Mr. David Abraham, standing in for Ms. Naomi Morgan.

We're here today, sir, for purposes of sentencing. On October 18th, you entered a plea of guilty to the indictment.

At that time, I referred your matter to the Probation Department for a presentence investigation report. I have that report before me. I have thoroughly reviewed it.

Have you, sir, had an opportunity to go over this report with your attorney?

THE DEFENDANT: Yes, your Honor.

THE COURT: According to your report, sir, as to Count 1, your Base Offense Level is 20. Two levels are

added, in that the offense involved carjacking. No victim-related adjustments, no adjustment for role in the offense, or obstruction of justice, for an adjusted offense level subtotal of 22.

11:09:11 As to Count 3, it's the same; 20 plus the two levels added because property of a financial institution was taken; for an adjusted offense level subtotal of 22.

Given the multiple-count adjustment, your combined adjusted offense level becomes a 24.

11:09:35 There are no Chapter 4 enhancements, no acceptance of responsibility, for a total offense level of 24.

As to Counts 2 and 4, the Guideline sentence for each count is the term of imprisonment required by statute, which is seven years consecutive to all other counts. You have no 11:09:59 criminal history points, which corresponds to a Criminal History Category of 1.

Mr. Bryan, I have obviously reviewed the objections. I've reviewed your Sentencing Memorandum.

Are you still maintaining your objection regarding 11:10:22 Count 4, in that the Probation Officer and the Government in its Sentencing Memorandum have both indicated that there is a seven-year statutory required sentence on Count 4 to be run consecutive to Count 2, as well as Counts 1 and 3? Are you maintaining your objection in light of the Probation 11:10:52 Officer's response?

MR. BRYAN: Your Honor, just for purposes of the record, I will maintain that objection, but I do acknowledge that I don't have very much support in the law or in the case law.

11:11:04 But, since federal criminal law seems to be changing quite a bit, and we just had a major change in the law with the First Step Act, I think it would be prudent on our part to just maintain your objection to the idea that the two gun specifications have to run consecutive to one another.

11:11:24 THE COURT: So you -- you do agree with the Government's interpretation of the law. You're simply trying to protect the record?

MR. BRYAN: That is correct, your Honor.

THE COURT: All right. Fair enough.

11:11:35 I also agree with the Government's position and I do, in fact, believe and find that Counts 2 and 4 both carry with them a seven-year mandatory sentence, each to run consecutive with each other and consecutive to any other sentence I give on Counts 1 and 3.

11:11:57 Any other objections?

MR. BRYAN: No, your Honor.

THE COURT: Mr. Zarzycki, any objections?

MR. ZARZYCKI: No, your Honor.

THE COURT: Well, Mr. Bryan, the report does

11:12:14 not afford your client acceptance of responsibility.

MR. BRYAN: We do object to that, your Honor.

THE COURT: Okay.

MR. BRYAN: I apologize.

THE COURT: Technically.

MR. BRYAN: Yeah, technically.

THE COURT: You are objecting.

MR. BRYAN: Well, I don't know if we're objecting as much as we believe the evidence will support a -- prior to your Honor even imposing sentence because Mr. -- first of all, Mr. Davis has pled guilty. He's accepted responsibility before, your Honor, in his change of plea. He's maintained that guilty plea. He hasn't -- there was some reference to the presentence report writer said he was attempting or thinking about withdrawing his plea. He has not done that. He doesn't plan on doing that. He will again in his statements before your Honor accept responsibility again this morning.

He has prepared a statement for your Honor prior to his sentencing, and I've heard it. I've -- I've heard him read that statement to me, in that he again acknowledges the wrongfulness of his actions and what he did.

So I think pursuant to Chapter 3 of the United States Sentencing Guidelines, he's done everything that -- to demonstrate acceptance of responsibility, including the timely guilty plea, which would also allow the Government to

11:13:41 move for the third level.

THE COURT: Mr. Zarzycki, do you agree that because he is not withdrawing his plea of guilty, or not attempting to I should say, that all of this conduct to date has reflected an acceptance of responsibility?

MR. ZARZYCKI: Your Honor, I would agree that because he has pled guilty and as we are standing sentence, he is not attempting to withdraw his plea, he's maintaining his plea of guilty to the indictment in this case. He has accepted responsibility. Yes, I would agree.

THE COURT: So you would agree that Paragraph 44 should be changed from a zero to a minus 3?

MR. ZARZYCKI: Yes.

THE COURT: All right.

I do, in fact, agree. Therefore, Paragraph 44 is, in fact, changed from a zero to a minus 3. In all other respects, the Court agrees with the manner in which the Guidelines have been applied. I, therefore, find that the total offense level, as to Counts 1 and 3, is a 21, and the Criminal History Category is a 1.

Now, Mr. Bryan, going back to you again, sir, I remind you I have, in fact, thoroughly reviewed your Sentencing Memorandum.

Do you wish for me to call on you first or your client?

MR. BRYAN: Your Honor, I understand there's a victim present as well today.

THE COURT: Certainly.

You know, I always let the Defense go first followed by the Government, and then I always give you an opportunity to have the last word.

MR. BRYAN: Okay.

THE COURT: So if you wish for me to change that order, I'm happy to do so.

MR. BRYAN: No, that's fine, your Honor. I'll speak first and then Mr. Davis will speak after me.

THE COURT: Okay.

MR. BRYAN: And --

THE COURT: But again, please, after the Government speaks and the Probation Officer, you will get the last word.

MR. BRYAN: We understand that, your Honor.

THE COURT: Okay.

MR. BRYAN: Your Honor has already set the parameters of sentencing as it relates to the Guidelines in this case. And also as it relates to the statutory mandatory sentences that must be imposed, which in this case, the Court has determined that there are two seven-year terms of incarceration which must run consecutive to whatever term of incarceration that your Honor imposes.

Also in addition to each other, that the seven has to run after the seven. So in -- then there's a Guideline sentence. The Guidelines, of course, aren't mandatory and your Honor has discretion to fashion a sentence that's sufficient but not greater than necessary to accomplish the purposes of sentencing. And by doing that, of course, the first thing the Court has to look at is the nature and circumstances of the offense, which are serious. And we're not trying to minimize the offense in any way, shape, or form. The offense that was committed in this case, the offenses that were committed in this case are about as bad as they can be. Armed robbery of a vehicle, armed robbery of a bank, the amount of terror that's inflicted upon the victims.

These clearly aren't victimless crimes. The amount of danger that's caused to the community during the commission of the crimes, we're not -- we're not ever going to stand here and try to say, well it was done, in sort of a less severe way. Armed robbery is armed robbery. There's no way to mitigate the nature and circumstances of the offense.

But, equal to the equation is the history and characteristics of the Defendant. And in this instance, I believe that there is a significant amount of mitigation that can be considered by -- considered by the Court. It's funny because when I came into court today, I -- I had a

word with Mr. Davis' grandmother, who's sitting there in the green on the end on the bench there. Also present in the courtroom are a couple of siblings, I believe, as well. Unfortunately, who isn't present in court today is Mr. Davis' mother, who wanted to be here, but Mr. Davis' sister, who's 11 years old, recently suffered an asthma attack and she's still in the hospital. So his mother is with his younger sister, who's in the hospital recovering from an asthma attack. But, of course, she is still very supportive of her son. It's reflected in the presentence investigation report, the amount of support that she has for her son, the amount of love that she has for her son.

But when I was talking to Ms. -- Mr. Davis' grandmother, she called me over and I don't know that she has any problem with me sharing this with the Court but she -- she called me up real close, and she got right next to my ear and says, "When you argue on behalf of my grandson today, I want you to think of him as being your son." And it's really easy for me to do, your Honor, because I have a son that's literally almost the same age as Lashawn Davis, and my son is a senior in high school about ready, has his own struggles and things, everything else but in his senior year of high school.

And Lashawn Davis at the time of his arrest was actually in high school. So many times my clients have

already dropped out of high school in the ninth grade or tenth grade, but Lashawn Davis hadn't dropped out of high school. He was still in school. That's reflected in the presentence investigation report. He was getting passing grades. He's actually a very bright young man.

I caused to be put on the Court's bench -- on the bench this morning, there's been reference to him taking the GED. Well, he took advantage of the time he was in the County Jail, which isn't a very conducive environment for learning, but he got away from all the hectic surroundings of the County Jail long enough to study for and successfully complete his GED. So it's -- that's something that perhaps could be updated in the presentence investigation report, as well as prior to him going to the Bureau of Prisons so they don't try to put him in a GED program. He actually has achieved that goal already.

And he's -- what I'm saying is that, you know, but for certain circumstances, Mr. Davis would be much more in the same position that my son is today than he is in his position.

You know, the minimum sentence that the Court imposes the Guideline sentence or imposes the mandatory 14 years on top of the Guideline sentence will be 17 years that Mr. Davis would be facing in this case. The minimum sentence under the law that he could face is 14 years.

And I would submit that based upon, not the nature and circumstances of the offense of the case, but the history and characteristics of Mr. Davis, that a sentence, even 14 years, is greater than necessary to accomplish the purposes of sentencing.

11:20:34

I would be remiss if I didn't mention another family member who's not present here today, and I believe it has in large an impact on where Mr. Davis ended up and how he ended up before your Honor.

11:20:48

As the presentence investigation report reflects, Mr. Davis actually witnessed the murder of his own father. When he was seven years old, his father was stabbed in an altercation out in front of the house. He witnessed his father dying in the driveway in front of the house. His mother, Mr. Davis -- I asked Mr. Davis about this, and he

11:21:04

doesn't remember it. But, I don't think a lot of us remember things of our childhood, but the mother reflected that Mr. Davis, after his father was killed, he used the blanket that they used to cover his father's body when they were waiting for the authorities to come pick up his

11:21:20

father's body, that he slept under the blanket to be closer to his father. And Mr. Davis reflects that his father -- and I can understand this -- even at a very young age, his father was his best friend, his closest ally. He was the most important other person in his life except for maybe his

11:21:38

mother as well.

And he had that taken away from him in a very violent way, which led to not only growing up without a father but growing up in a system of poverty where they had to have water shut off on the home every month, literally were going without food for large periods of time, and he was living in an environment that was surrounded by violence.

And so it wasn't incredibly surprising he found himself sort of gravitating towards individuals in that environment that led to him being involved in the criminal conduct that he was involved in.

Mr. Davis is going to speak on his own behalf. He's not going to make any excuses about, "Well my childhood is what led me to do this," and I'm not even suggesting that either because a lot of people suffer childhood trauma that don't eventually go out and commit these types of crimes, but the lack of advantages of Mr. Davis growing up and the lack of a stable environment for Mr. Davis growing up certainly contributed to him being in a situation where he allowed himself to get involved in the type of conduct he did. And his youth as well, and I think that's important.

We noted in our sentence Sentencing Memorandum as a matter of fact, the Supreme Court itself abolished the death penalty for youthful offenders and abolished life without parole for youthful offenders because it's recognized now in

the literature that someone 17 or 18 years old, there is -- they're still developing their sense of, you know, not just sense of -- he obviously knew right from wrong, whatever, but developing impulse controls, develop rational thinking, developing the ability not to follow impulses of others into wrongful conduct. And so there's more of a -- that someone who is subjected to the rehabilitative services of the penal system, that they're going to benefit from. And I would suggest and submit that based upon everything else we know about Lashawn Davis, that he is someone who's going to benefit from the programs that will be made available to him in the Bureau of Prisons, as he took advantage of the opportunity as well in County Jail to study for and to get his GED. And I think that's considerable evidence. He's going to take advantage of the rehabilitative opportunities that he has in prison.

For those reasons, we believe that the sentence of -- that the minimum of what your Honor deems appropriate would be sufficient but not greater than necessary to accomplish the purposes of sentencing.

Thank you.

THE COURT: Mr. Davis.

THE DEFENDANT: Good morning, your Honor. How are you doing today?

THE COURT: Good. Thank you.

THE DEFENDANT: I've been in jail. I have changed for the better. And I have a positive mindset. I know I committed serious crimes, and I'm sorry for how I was acting when I was out. I was young and dumb. If I could go back --

THE COURT: I'm going to ask you to slow down just a little bit and talk into the microphone.

THE DEFENDANT: My bad.

Good morning, your Honor. How are you doing today? I would just -- I was saying since I've been in jail, I have been changed for the better and I have a positive mindset.

I know I committed serious crimes and I'm sorry for how I was acting when I was out. I was young, dumb, and if I could go back and change things, I would.

I would like to thank you for having me sit down here because while down here, I got my GED so when I get back out, I won't mess up no more.

And for me being there so long, a lot of people show me -- I know who to mess with and not to mess with. I also -- I was being selfish towards the people caring about me. I know being here is hurting them deep inside. I promise to make this my last time coming to jail. I don't want this type of lifestyle. I want to be out there with my family making sure they're safe and stay on the right path, don't end up like me.

My goals in life is to go to college, to get a nice job, save my money and start a family of my own. I also want to drive around the world.

Every since I seen my dad die, my life, I stopped caring about. As I got older, I hated the world because my best friend was taken away from me. Now I think how I think about. I just want to apologize for how I was acting when I was out, and I hope you don't take my life away from me when I was stupid and dumb. I don't believe that giving me a lot of time --

COURT REPORTER: I'm sorry.

THE DEFENDANT: My bad. My bad.

I just want to apologize for how I was acting when I was out and I hope you don't take my life away from a mistake I made when I was young and dumb.

I don't believe that giving me a lot of time is going to help me, going to met me up more. So if you could give me another chance in life, I promise you won't hear about me coming back to jail no more.

Sometimes I wish I would have listened to my Mom and all she do is try to motivate me to do better in life and maybe I wouldn't be in here. But since I was being hard headed, I guess I learned the hard way and I learned my lesson.

Thank you for listening while I talk, and I hope you

have a good day.

THE COURT: Mr. Zarzycki.

MR. ZARZYCKI: Thank you, your Honor.

As I filed in the Memorandum for the Sentencing --

11:27:14 THE COURT: I've thoroughly reviewed it.

MR. ZARZYCKI: Thank you.

Your Honor, I'll be brief. I just wanted to highlight a couple of things. One of them is that the Government strongly would urge the Court for a sentence within the 11:27:25 Guideline range as we agreed to recommend in the plea agreement.

And the reason being is that that would be sufficient but not greater than necessary to satisfy the purposes of sentencing here.

11:27:36 And focusing on the nature and circumstances of the offense, of course, but also I would, just as Defense counsel do, focus on the nature or the circumstances of the Defendant or the history and characteristics of the Defendant, rather.

11:27:48 I'd first point out that I understand that the Defendant -- I don't dispute he had some difficulty growing up. It sounds -- these are terrible things I just heard from Defense counsel. It does not change the fact that he is a bright young man, as Defense counsel would say, and 11:28:05 certainly appears to know the difference in his acceptance

of responsibility between right from wrong. He knows what is doing right and what is harming other people.

The circumstances of these offenses are -- were terribly traumatic for the victims who had guns pointed in their faces. One of them you'll actually hear from, Ms. Uniqua Munez, was in her car and at nighttime, 1:00 in the morning, somebody in her car that was dragged from her car with a gun put into her face. It was a horribly traumatizing experience.

Now I understand -- as was the people at the bank. And these were not like note job bank robberies. They were robberies involved leaping over the counter in robbery, leaping over the counter and pointing guns at people, human beings. Each person, he and his codefendant had guns in this case but both of them were armed with Glock firearms.

So both of these offenses are similar in that the firearms were used and were pointed in the direction of human beings that were terrorized as a result.

Secondly, considering the nature and circumstances of the offense, I would just like to -- sorry, the history and characteristics of the Defendant, I highlight the fact that this was done while the Defendant was awaiting -- was in the pendency of a juvenile case, was in the middle of the rehabilitative services of Juvenile Court, and that was an aggravated robbery with a gun.

11:29:43 And he did this while he was out, he committed both of these offenses and that's referenced in the presentence report.

THE COURT: He -- he was not -- was he adjudicated?

MR. ZARZYCKI: Whether he was adjudicated or not, that was the offense for which he was awaiting. It was a case that was in its pendency, awaiting trial in that case and was -- was released while he awaited trial for an aggravated robbery with a gun.

11:29:58 THE COURT: And we don't know the disposition?

MR. ZARZYCKI: Correct.

THE COURT: Correct.

MR. ZARZYCKI: It's unclear what the final disposition is. However, I believe that there was adjudication, although maybe not a final disposition. Perhaps the officer could clear this -- clear it.

11:30:05 PROBATION OFFICER: We still not have information from Cuyahoga Juvenile Court, your Honor. So, unfortunately, I cannot confirm.

11:30:20 THE COURT: Thank you, Mr. Abraham. Thank you.

I just wanted to clarify that because I -- you know, I cannot consider arrests without an adjudication or a conviction.

11:30:37

MR. ZARZYCKI: Okay.

Okay. So you know, regardless of what that was, there was some indication in the presentence report that he was receiving some services from the Juvenile Court, regardless of whether he committed the offense or not, and those services were clearly not having an effect because he was out there robbing banks and pulling people from their cars with guns.

So I would just like to highlight that, as -- in discussing the nature and circumstances of the offense of the history of the Defendant.

I won't take any more of the Court's time. The victim, Ms. Munez, would like to be heard as well.

THE COURT: Mr. Bryan, perhaps you could move over to the table.

MR. BRYAN: Sure.

MR. ZARZYCKI: She has an interpreter with her also, your Honor.

THE COURT: Certainly.

MS. MUNEZ: Hi.

THE COURT: Hello.

THE INTERPRETER: She wants to know if she can start to speak.

THE COURT: Yes, please, please.

THE INTERPRETER: First of all, I want to

thank everyone for hearing me and also to the State of Ohio and all the authorities and the FBI for helping me and supporting me during this case.

Since that night, many things have not been easy for me. I wasn't born in this country. I was just on vacation. I had to stay here until this was resolved. I lived through the most terrorizing experience of my life. I hope it never happens again.

I don't really want to enter or mention any details about what happened that night because you are aware of all of them. I just want to forget it all and I hope it never happens to anyone else.

It's also been hard for me to get back into my daily routine and a daily life. I also cannot -- I'm afraid to go out at night because I'm very anxious, and I also can't have any social relations with or social doings with people of certain class because I'm -- not for any of their own fault but because of what happened.

I don't want that to happen to anyone else ever what happened to me. And I think that they need to rehabilitate themselves. And I want them to do -- I think that you've done a very good job with everything that's happened, and I just want the whole thing to be over with.

I'm not here to judge anyone. Not -- and also not to ask that you give more time than is -- I don't care about

those details. Just the job that you've done is -- I just want them to recuperate and rehabilitate themselves and get their life back together again and then me, too.

And I want to thank everyone again. That's it.

11:34:56 THE COURT: Well, ma'am. I want to thank you for being here today, and I am so very sorry that you had to go through such a terrifying experience.

You are quite an impressive young woman. And I, too, hope that nobody ever has to experience what you

11:35:20 experienced. I wish you all the best going forward.

MS. MUNEZ: Thank you so much.

THE COURT: Thank you. Thank you.

Anything further, Mr. Zarzycki?

MR. ZARZYCKI: No, your Honor. Thank you.

11:35:44 THE COURT: Mr. Abraham, anything, sir?

PROBATION OFFICER: Nothing, your Honor.

THE COURT: Mr. Bryan?

MR. BRYAN: Your Honor, I am -- again, I'm going to allow Mr. Davis to have the last word here, but

11:35:53 certainly I -- again, I just want to state for the record how impressed I was with the victim and her statement.

THE COURT: Incredibly impressive young woman.

MR. BRYAN: From my own observations. I -- I don't know how it could have been easy.

11:36:10 THE COURT: Right.

(Counsel and client conferring.)

THE DEFENDANT: I'm sorry for taking you out your car that you worked hard for. I don't want you to feel like you're not safe anywhere for what I did, and I hope you never have to go through nothing like that again. I apologize for my actions and hope you will forgive me.

MR. BRYAN: Nothing further, your Honor.

THE COURT: It is the judgment of this Court, sir, that you be committed to the custody of the Bureau of Prisons to be imprisoned for a term of 12 months on each of Counts 1 and 3, to be served concurrently; 84 months on Count 2 and Count 4, to be served consecutively to each other and all other counts, for a total of 180 months or 15 years.

Upon release from imprisonment, you will be placed on supervised release for a term of five years. That's three years on Count 1 and five years on Counts 2, 3 and 4, all to be served concurrently.

Within 72 hours of release from the custody of the Bureau of Prisons, you must report in person to the sentencing -- to the Probation Office in the district to which you are released. I'm not ordering a fine. But, there is a $400 special assessment due and payable today.

While on supervision, you must comply with all of the mandatory and standard conditions that have been adopted by

this Court. They are set forth in Part D of your report.

In addition, I am ordering the following: There is restitution due and owing in the amount of $1008, due and payable to Dollar Bank, Richmond Heights, Ohio. It's to be paid at a rate of no less than 25 percent of your gross monthly income through the Bureau of Prisons Inmate Financial Responsibility Program. Any balance remaining is to become a condition of supervision. Payment is to be commenced no later than 60 days following release. Payments are to be made at a rate of no less than 10 percent of your gross monthly income.

You must provide -- strike that.

I am going to order drug testing within 15 days of release from imprisonment, and you must submit to at least two periodic drug tests thereafter.

You must provide your officer with access to any requested financial information and authorize release of any financial information.

You will not incur any new credit charges or open additional lines of credit without the approval of your officer. I am going to order drug treatment and cognitive behavioral treatment as deemed appropriate by your officer.

You must submit to a warrantless search, based only upon reasonable suspicion of contraband or evidence of a violation of a condition of release.

11:39:34 You must apply all monies received from income tax refunds, lottery winnings, judgments, et cetera to your restitution obligation. You will not communicate or otherwise interact with any known member of the Heartless Felons, Right Gang Forever, Rack Gang, RGF Gang, without first obtaining the permission of your officer.

11:39:51 Let me inform you that you do have the right to appeal your conviction and sentence to the extent that you have not waived your appellate rights. If you cannot afford to appeal, the costs will be borne by the Government.

I do, in fact, find the sentence to be sufficient but not greater than necessary to satisfy the purposes of sentencing.

11:40:06 In arriving at what this Court believes to be a very significant sentence, I have taken into account the factors that your attorney has mentioned, sir, the fact that you are 19 years old. In fact, I believe you had just turned 19 prior to these horrendous offenses.

11:40:30 I do acknowledge that you don't have any prior convictions. There may be suspicions, but they weren't prior convictions. There aren't prior convictions.

11:40:55 I also acknowledge that you did, in fact, have a very difficult childhood. No child should witness the murder of his or her father. But that all being said, I must look at the fact that you committed two extraordinarily serious

offenses and both were committed with a firearm.

You forcibly removed this young woman, who just spoke to us moments ago, from her car at gunpoint. That's going to leave scars on her forever.

11:41:18 You did a bank robbery, and you were the one that pointed a gun in the face of -- faces of individuals, and you forced them to the ground. You've associated yourself with gang members known for their criminal activity.

When I look at all of the mitigating factors, as well 11:41:42 as the aggravating factors, this Court believes that a sentence of 15 years is sufficient and reasonable.

Mr. Bryan, on behalf of your client, sir, Number 1, any objections?

MR. BRYAN: No, your Honor.

11:43:36 THE COURT: Number 2, anything further?

(Counsel and client conferring.)

MR. BRYAN: Just that the Court's recommendation -- the journal could have a recommendation to the Bureau of Prisons that he be placed in the nearest 11:44:04 appropriate facility for the Northern District of Ohio.

THE COURT: I will.

MR. BRYAN: And also credit for time that he's served while awaiting resolution of this case.

THE COURT: I will.

11:44:14 Mr. Zarzycki, first of all, sir, any objections?

MR. ZARZYCKI: No, your Honor.

THE COURT: Secondly, sir, anything further?

MR. ZARZYCKI: No, your Honor. Thank you.

THE COURT: Mr. Abraham --

11:44:21 PROBATION OFFICER: Nothing further.

THE COURT: -- anything, sir?

Good luck to you, sir. We're in adjournment.

(Proceedings adjourned at 11:44 a.m.)

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

s/Shirle Perkins
Shirle M. Perkins, RDR, CRR
U.S. District Court - Room 7-189
801 West Superior Avenue
Cleveland, Ohio 44113
(216) 357-7106