

FILED

APR 14 2025

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO CLEVELAND

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

LASHAWN DAVIS,                    )
                                  )  Crim No. 1:18-cr-00184-PAG-1
    Movant,                   )
                                  )
vs.                               )  **MOTION FOR COMPASSIONATE**
                                  )  **RELEASE PURSUANT TO**
UNITED STATES OF AMERICA,         )  **18 U.S.C. § 3582(C)(1)(A)**
                                  )  **AND FIRST STEP ACT OF 2018**
    Respondent.               )
                                  )

COMES Movant, LASHAWN DAVIS ("Davis"), appearing *pro se,* and in support of this memorandum would show as follows:

## I. JURISDICTION

The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582. The scope of a proceeding under 18 U.S.C. § 3582(c)(2) in cases like this one is extremely limited. *Dillon v. United States*, 130 S.Ct. 2683, 2687(2010). It is black-letter law that a federal court generally "may not modify a term of imprisonment once it has been imposed." *Id.* However, Congress has allowed an exception to that rule "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by

1

the Sentencing Commission." 18 U.S.C. § 3582(c)(2); see also, *Freeman v. United States*, 131 S.Ct. 2685 (2011) (reciting standard for sentence modifications). Such defendants are entitled to move for retroactive modification of their sentences. *Dillon*, 130 S.Ct. at 2690–91.

## II. STATEMENT OF THE CASE

### A.    Procedural Background

On April 11, 2018, a grand jury sitting in the United States District Court for the Northern District of Ohio, Eastern Division, returned a four (4) count Indictment charging Davis. See Doc. 13.[1]  Count 1 charged Davis with Carjacking, in violation of 18 U.S.C. §§ 2119(1) and 2. *Id*. Counts 2 and 4 charged Davis with Using or Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C.§ 924(c)(1)(A)(ii). *Id*. Counts 3 charged Davis with Armed Bank Robbery, in violation of 18 U.S.C.§§ 2113(a) and (d), and 2. *Id*.

On October 18, 2018, a Plea Hearing was held and Davis entered a plea of guilty on Counts 1, 2, 3, and 4 of the Indictment, pursuant to a written Plea Agreement. See Doc. 21.

On March 7, 2019, Davis was sentenced to a total term of 180 months'

---

[1] "Doc." refers to the Docket Report in the United States District Court for the Northern District of Ohio, Eastern Division, in Criminal No. 1:18-cr-00184-PAG-1, which is immediately followed by the Docket Entry Number.

2

imprisonment, 5 years Supervised Release, $1,008.00 Restitution, and a Mandatory Special Assessment Fee of $400. See Docs. 33, 34.

On March 15, 2019, Davis timely filed a Notice of Appeal. See Doc. 38.

On November 26, 2019, the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") affirmed Davis' judgment. See Doc. 45.

On February 18, 2020, Davis filed a Motion to Reduce Sentence Pursuant to First Step Act 2018, which was denied on March 16, 2020.

On April 1, 2020, Davis filed a Notice of Appeal re: Order denying his Motion for Reduction of Sentence Per First Step Act of 2018, which was denied on December 1, 2020. See Docs. 46, 48, 49, 62.

On June 30, 2020, Davis filed a Request for Compassionate Release re First Step Act of 2018 (COVID-19), which was denied on November 6, 2020. See Doc. 50.

On November 19, 2020, Davis filed a Notice of Appeal re: denial of his Compassionate Release Motion, which was vacated and remanded for further proceedings. On May 7, 2021, the Sixth Circuit issued a mandate denying his appeal. See Docs. 60, 64, 65.

On July 30, 2021, Davis filed a Motion for Reconsideration of Motion for Compassionate Release re First Step Act of 2018 (COVID-19), which was denied on August 3, 2021. See Docs. 66, 67.

3

On August 12, 2021, Davis filed a Notice of Appeal re: Motion for Reconsideration and Order denying Compassionate Release, which the Sixth Circuit denied and affirmed his motions on April 21, 2022. See Docs. 68, 70.

## B. Statement of the Facts

### 1. Offense Conduct

On January 3, 2018, a Glock 27 bearing serial number BEFM972 was purchased by Tyla Spencer ("Spencer") at Cleveland Armory, a sporting goods store in Valley View, OH. Also purchased at the same time was a red laser sight. On or after January 3. 2018, Davis posted a photo to Instagram using account name rgf.shawnn which showed Davis holding two new Glock pistol boxes in what appeared to be a sporting goods store.

On February 4, 2018, a carjacking/aggravated robbery occurred at 1732 Coventry Road, Cleveland Heights, OH, during which a burgundy Hyundai Elantra bearing Ohio registration HUM1555 was taken at gunpoint. The victim described the subjects as two young black males carrying black semi-automatic handguns.

On Saturday, February 1 7, 2018, at approximately 11:30 am, two black males entered the Dollar Bank at 5201 Wilson Mills Road, Richmond Heights, Ohio and robbed the bank at gunpoint stealing approximately $1,008.00 in U.S. currency. The victim teller described the weapon used in the robbery as a grey or black semi-automatic handgun with two "circles" in the area of the muzzle.

Surveillance video obtained from the bank and viewed by Special Agent William L. Hasty ("Hasty") showed a black male wearing a black hoodie and a face covering of some kind, and light colored pants entering the bank with what appeared to be a small handgun drawn.

4

Employees who were working at the time of the robbery were interviewed and stated the suspects entered the bank yelling and ordering them to not move and to get on the ground. One employee heard the second robber yell, "you got 5 seconds or I'm going to fucking kill you" before beginning a countdown of "five, four, three." Employees then heard the two robbers run out the door, where employees captured the registration of the getaway vehicle as Ohio HUM1555 and contacted 911. That registration returned to a stolen burgundy Hyundai which had been taken at gunpoint on February 4, 2018 in Cleveland Hts., OH.

On March 6, 2018, during the execution of an arrest warrant targeting Davis at his residence, 1835 Penrose, East Cleveland, OH, a revolver was found in his bedroom in plain view. Following this, the residence was locked down pending application for a search warrant. While that warrant was awaiting signature. Davis volunteered the location of a Glock 27 pistol in his bedroom, secreted inside a stack of laundry next to his bed. Upon executing that search warrant, the above mentioned Glock 27 bearing serial number BEFM972 was recovered in a laundry basket next to the bed as described by Davis. Additionally, a red laser sight was attached at the time of the discovery. Upon its discovery, the weapon's muzzle was pointed at officers, with the muzzle and laser sight both appearing as two circles to the viewer. A stack of fresh $2 bills were also found in Davis' bedroom. A new stack of $2 bills were taken in the bank robbery on February 17, 2008.

During a March 7, 2018 interview of Davis, which was conducted at the Valley View, OH Police Department. Davis confessed on February 17, 2018 the robbery of the Dollar Bank at 5201 Wilson Mills Road, Richmond Heights, Ohio, as well as the armed carjacking of the burgundy Hyundai bearing Ohio registration HHM1555 which occurred on February 4, 2018 in Cleveland Hts., OH.

See Doc. 1-1 at 1-3.

5

### 2. Plea Proceeding

On October 18, 2018, a Change of Plea Hearing was held before Judge Patricia A. Gaughan. Pursuant to a written Plea Agreement [Doc. 21], Davis pleaded guilty to all four counts in the Indictment. The parties made no agreement about the applicable sentencing range or the sentence to be imposed, but agreed on an applicable offense level under the Sentencing Guidelines. Specifically, the parties agreed to a combined offense level of 22 for both the carjacking and bank robbery counts, see USSG § 2B3.1(b)(1), (5), and a 2-level multiple-count adjustment, see USSG § 3D1.4(a), for a Total Offense Level of 24. The government agreed to recommend a 3-level downward adjustment for acceptance of responsibility under USSG § 3E1.1. With respect to the two § 924(c) counts, the parties agreed that the first count carried a 7-year mandatory minimum sentence and the second count carried a 25-year mandatory minimum, both of which must be served consecutively to any sentence imposed on all other counts in the indictment. See 18 U.S.C. § 924(c)(1)(C)(i) (2017) ("In the case of a second or subsequent conviction under this subsection, the person shall . . . be sentenced to a term of imprisonment of not less than 25 years."); 18 U.S.C. § 924(c)(1)(D)(ii) (2017) ("[N]o term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person . . . ."). The agreement stated:

6

The parties agree to recommend that the Court impose a sentence within the range specified pursuant to the advisory Sentencing Guidelines in addition to a mandatory consecutive term of 7 years (84 months) on Count 2 and a mandatory consecutive term of 25 years (300 months) on Count 4, pursuant to . . . 18 U.S.C. § 924(c)(1)(A)(ii). It is anticipated by the parties that the total guideline sentence would place the defendant in a range of imprisonment first represented in the guidelines at offense level 42 prior to acceptance of responsibility.

Davis waived his right to appeal or collaterally attack his conviction and sentence, but reserved the right to appeal any sentence that exceeded the statutory maximum or "any sentence to the extent it exceed[ed] the maximum of the sentencing imprisonment range determined under the advisory Sentencing Guidelines in accordance with the sentencing stipulations and computations in [the plea] agreement, using the Criminal History Category found by applicable by the Court." The appeal waiver did not preclude Davis from raising claims of ineffective assistance of counsel or prosecutorial misconduct on direct appeal or in a collateral attack. The trial court conducted a change-of-plea hearing and accepted Davis's guilty plea.

3.    Prsentence Report Calculations and Recommendations

The PSR calculated a guidelines imprisonment range of 51 to 63 months, based on a Total Offense Level of 24 and a Criminal History Category of I. After the change-of-plea hearing, the First Step Act of 2018 went into effect. Section 403(a) of the Act limited the practice of "stacking" sentences for multiple § 924(c) violations

7

in the same case by striking from § 924(c)(1)(C) "second or subsequent conviction under this subsection" and replacing it with "violation of this subsection that occurs after a prior conviction under this subsection has become final." Pub. L. No. 115-391, § 403(a), 132 Stat. 5194. In effect, the 25-year mandatory minimum sentence for a subsequent § 924(c) conviction now applies to only "a defendant who violated the subsection after a prior conviction under the subsection had become final." *Cherry v. United States*, No. 4:08CR520, 2019 WL 2411216, at *1 (N.D. Ohio June 7, 2019).

### 4. Sentencing Proceeding

On March 7, 2019, a Sentencing Hearing was held before Judge Patricia A. Gaughan. See Doc. 33. At the sentencing hearing, the District Court explained that, in light of the First Step Act, the statutory mandatory minimum applicable to both § 924(c) counts was 7 years, to be served consecutively to each other and to all other counts. With respect to the offense level for the carjacking and armed-bank robbery counts, the court agreed with the PSR's calculation and added a 3-level reduction for acceptance of responsibility under § 3E1.1, which resulted in a guidelines range of 37 to 45 months. The court ultimately varied downward from that range and imposed a concurrent sentence of 12 months' imprisonment for the carjacking and robbery convictions and 84 months' imprisonment for each § 924(c) conviction, to be served consecutively to each other and to all other counts, for a total term of imprisonment

8

of 180 months. The court imposed a 5-year term of supervised release. See Doc. 34. The Court also ordered payment of $1,008.00 Restitution, and a Mandatory Special Assessment Fee of $400. *Id.* Davis timely filed a Notice of Appeal. See Doc. 38.

### 4. Appellate Proceeding

On appeal, Davis' counsel has filed a brief and a motion to withdraw pursuant to *Anders*. Counsel states that she has examined the record and found no non-frivolous grounds for appeal. Nonetheless, counsel identifies two potential issues for appeal: (1) whether Davis can appeal his conviction and sentence in light of the appeal-waiver provision of the plea agreement; and (2) whether the sentence is reasonable. Davis was notified of his right to respond to counsel's *Anders* brief but has not done so. We find that counsel has filed an adequate *Anders* brief and properly concludes that there are no issues present on the record that would support an appeal. See *Anders*, 386 U.S. at 744. Independent review of the record confirms that there are no issues of arguable merit for appeal. Accordingly, the Sixth Circuit granted counsel's motion to withdraw and affirmed the District Court's judgment. See ROA. 23.[2]

---

[2]

"ROA." refers to the record on appeal in No. 19-3209, which is immediately followed by the page number.

## III. DISCUSSION

As a preliminary matter, Davis respectfully requests that this Court be mindful that courts have a duty to construe *pro se* motions liberally. See *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); and *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### A.  Federal Courts Have the Jurisdiction and Power to Reduce An Existing Sentence

This Court has the power to adjust Davis' sentence. District courts no longer need a motion from the Bureau of Prisons to resentence a federal prisoner under the compassionate release provisions of 18 U.S.C. §3582(c)(1)(A)(i). A district court may now resentence if the inmate files a motion after exhausting administrative remedies. The reasons that can justify resentencing are not limited to medical, age, or family circumstances. A district court may resentence if the inmate demonstrates extraordinary and compelling reasons for a sentence reduction. Such reasons are present in this case.

### 1.  Historical Framework

Congress first enacted the compassionate release provisions in 18 U.S.C. §3582 as part of the Comprehensive Crime Control Act of 1984. That legislation provided that a district court could modify a final term of imprisonment when extraordinary

10

and compelling reasons warrant such a reduction. 18 U.S.C. §3582(c)(1)(A)(i). In 1984, this provision was conditioned on the Bureau of Prisons (BOP) filing a motion in the sentencing court. Absent a motion by the BOP, a sentencing court had no jurisdiction to modify an inmate's sentence. Congress did not define what constitutes an "extraordinary and compelling reason," but the legislative history recognized that the statute was intended, in part, to abolish and replace federal parole. Rather than have the parole board review for rehabilitation only, Congress authorized review for changed circumstances:

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term on imprisonment. S. Rep. No. 98-225 at 55-56 (1983).

18 U.S.C. § 3582 acts as a "safety valve" for the "modification of sentences" that would previously have been addressed through the former parole system. *Id.* at 121. The provision was intended "to assure the availability of specific review and reduction of a term of imprisonment for "extraordinary and compelling reasons" and [would allow courts] to respond to changes in the guidelines." *Id.* Thus, sentencing courts have the power to modify sentences for extraordinary and compelling reasons.

11

2.　　Section 3582(c)(1)(A) is Not Limited To Medical, Elderly or Childcare Circumstances

Congress initially delegated the responsibility for determining what constitutes "extraordinary and compelling reasons" to the United States Sentencing Commission. 28 U.S.C. § 994(t) ("The Commission...shall describe what should be considered "extraordinary and compelling reasons" for sentence reduction, including the criteria to be applied and a list of specific examples." Congress provided one limitation to that authority: "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Rehabilitation could, however, be considered with other reasons to justify a reduction.

Pursuant to section 994(p) of title 28, United States Code, the United States Sentencing Commission hereby submits to the Congress the following amendments to the Guidelines Manual and the reasons therefor. As authorized by such section, the Commission specifies an effective date of November 1, 2023, for these amendments:

(b)　*Extraordinary and Compelling Reasons.*– Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

(1)　*Medical Circumstance of the Defendant.*–

(A)　The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.

12

(B)  The defendant is—

    (i)  suffering from a serious physical or medical condition,

    (ii)  suffering from a serious functional or cognitive impairment, or

    (iii)  experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C)  The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D)  The defendant presents the following circumstances—

    (i)  the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

    (ii)  due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

    (iii)  such risk cannot be adequately mitigated in a timely manner.

13

(2)   *Age of the Defendant.*— The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(3)   *Family Circumstances of the Defendant.*—

   (A)   The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

   (B)   The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

   (C)   The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

   (D)   The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

14

(4) *Victim of Abuse.*— The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:

    (A) sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or

    (B) physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1 (Application Instructions); that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant. For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

(5) *Other Reasons.*— The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

(6) *Unusually Long Sentence.*— If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the

15

motion is filed, and after full consideration of the defendant's individualized circumstances.

This amendment responds to, among other things, the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239, which amended 18 U.S.C. § 3582(c)(1)(A) to authorize courts to grant a motion for a sentence reduction upon a defendant's own motion. Previously, a court was authorized to do so only upon the motion of the Director of the Bureau of Prisons ("BOP"). Congress amended the law for the express purpose, set forth on the face of the enactment, of "increasing the use" of sentence reduction motions under section 3582(c)(1)(A). First Step Act § 603(b).

3.      The First Step Act

The First Step Act, P.L. 115-391, 132 Stat. 5194, at (Dec. 21, 2018), among other things, transformed the process for compassionate release. *Id*. at § 603. Now, instead of depending upon the BOP to determine an inmate's eligibility for extraordinary and compelling reasons and the filing of a motion by the BOP, a court can resentence "upon motion of the defendant." A defendant can file an appropriate motion if the he or she has exhausted all administrative remedies or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. §3582(c)(1)(A). The purpose and effect of this

16

provision is to give federal courts the ability to hear and resentence a defendant even in the absence of a BOP motion. Congress labeled this change "Increasing the Use and Transparency of Compassionate Release." 164 Cong. Rec. H10346, H10358 (2018). Senator Cardin noted in the record that the bill "expands compassionate release under the Second Chance Act and expedites compassionate release applications." 164 Cong. R. 199 at S7774 (Dec. 18, 2018). In the House, Representative Nadler noted that the First Step Act includes "a number of very positive changes, such as ... improving application of compassionate release, and providing other measures to improve the welfare of federal inmates." 164 Cong. R. H10346-04 (Dec. 20, 2018).

Once an inmate has pursued administrative remedies through the BOP, upon his or her motion, the sentencing court has jurisdiction and the authority to reduce a sentence if it finds "extraordinary and compelling reasons" to warrant a reduction. Judicial authority is no longer limited to cases that have the approval of the BOP.

4.    Davis Has Exhausted Administrative Remedies

A motion by an inmate can be filed in the district court after (1) the inmate has made the request to the Warden, and (2) either the request was denied or 30 days have lapsed from the receipt of the request, whichever is sooner. First Step Act of 2018, section 803(b), Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018).

17

On November 22, 2024, Davis submitted a Request for Administrative Remedy to the Warden at Butner Low. However, after further evaluation, the BOP determined that Davis did not meet the eligibility criteria for the request, ultimately denying his Attempt At Informal Resolution. See Exhibit 1.  On December 13, 2024, Davis submitted another Request for Administrative Remedy, citing [U.S.S.G.] Amendment 829, changes in relevant law, and sentencing disparity. However, on December 27, 2024, the BOP once again rejected his request, citing confusion regarding the specific law he was referencing. Consequently, this motion is being filed in response to that rejection. Because 30 days have lapsed from the receipt of the request and the BOP failed to file a motion on Davis' behalf, exhaustion of administrative remedies is not an issue in this case. See 18 U.S.C. § 3582(c)(1)(A).

**B.** **The Changes in Relevant Law, along with Unwarranted Sentence Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct, Are Extraordinary and Compelling Circumstances That Warrant Release.**

Section 3582(c) states that a district court cannot modify a term of imprisonment once it has been imposed except that, in any case:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility,

whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A).

In this case, there are at least three extraordinary and compelling reasons warranting such a reduction, discussed as follows:

### 1.    Youthful Offenders (Amendment 829)

Amendment 829 to the U.S. Sentencing Guidelines, effective November 1, 2023, introduces significant changes related to youthful offenders, aligning sentencing practices with current neuroscience and social science research on the cognitive development of young adults. Courts now have broader discretion to consider a defendant's age (specifically if they were 25 years old or younger at the time of the offense) as a mitigating factor during sentencing. This change recognizes that individuals in this age range may lack full cognitive development, affecting their impulse control, judgment, and decision-making abilities. The amendment reflects studies showing that the brain's prefrontal cortex, responsible for reasoning and executive functions, continues to mature into the mid-20s. As a result, youthful

19

offenders are seen as more capable of rehabilitation than older defendants. Sentencing courts are now encouraged to impose downward departures from the guideline range for youthful offenders if the defendant's age and immaturity significantly contributed to the offense. Judges may consider the offender's upbringing, environment, and susceptibility to negative influences at the time of the crime.

Under Amendment 829, Davis' sentence enhancement based on his juvenile criminal history may be inappropriate because (1) the amendment encourages courts to consider youthful offenders' reduced culpability due to their incomplete brain development. Enhancing a sentence based on juvenile offenses contradicts this principle, as those offenses often reflect immaturity and vulnerability to negative influences rather than hardened criminal behavior; and (2) Davis' juvenile record likely reflects offenses committed during a period of developmental immaturity. Under Amendment 829, judges are instructed to view such offenses with caution and consider downward departures rather than automatic enhancements based on those records. In *United States v. Gall*, 552 U.S. 38 (2007), the Supreme Court recognized that youthful defendants possess a heightened capacity for reform. Thus, the same reasoning should apply that Davis' juvenile record should have been viewed as a mitigating factor rather than an aggravating one.

     2.     <u>924(c) Stacking</u>

Section 403 of the Act eliminates the so-called "stacking" of 18 U.S.C. § 924(c)(1)(A) penalties. Section 924(c) provides for various mandatory consecutive penalties for the possession, use, or discharge of a firearm during the commission of a felony violent or drug offense. However, for a "second or subsequent conviction" of 924(c), the mandatory consecutive penalty increases to 25 years.

Occasionally, the Government charges a defendant with multiple counts of 924(c), which results in each count being sentenced consecutive to each other as well as to the underlying predicate offense. For example, a defendant is charged with two counts of drug trafficking and two counts of 18 U.S.C. § 924(c)(1)(A)(i), which requires a consecutive 5 years' imprisonment to the underlying offense for mere possession of a firearm during the commission of the drug offense. At sentencing, the Court imposes 40 months for the drug trafficking offenses. As a result of the first § 924(c)(1)(A)(i) conviction, the Court must impose a consecutive 60 months (5 years). But what about the second § 924(c)(1)(A)(i) conviction? In such situations, courts have been treating the second count as a "second or subsequent conviction." As such, the 60-month consecutive sentence becomes a 300 month (25 years) consecutive sentence. In our hypothetical, then, the sentencing court would impose a total sentence of 400 months (40+60+300) inasmuch as the second 924(c) count was a "second or subsequent conviction."

21

Now, under the Act, to avoid such an absurd and draconian result, Congress has clarified that the 25-year mandatory consecutive penalty only applies "after a prior conviction under this subsection has become final." Thus, the enhanced mandatory consecutive penalty no longer can be applied to multiple counts of 924(c) violations.

In other words, The First Step Act revised section 924(c)(1)(C) by providing that the higher penalty for a "second or subsequent count of conviction" under section 924(c) is triggered only if the defendant has a prior section 924(c) conviction that has become final. In other words, the extreme 25-year recidivism enhancement of 924(c) is now to apply only to actual recidivists.

**Example:** Contemplates five-year mandatory minimum terms for using, carrying, or possessing a firearm in furtherance of a crime of violence or drug trafficking offense. Higher mandatory minimums apply depending on other factors such as whether the firearm was brandished (seven years) and whether the firearm was a machine gun (30 years) among others.

| 924(c) Counts of Conviction in the Same Indictment | BEFORE the First Step Act | AFTER the First Step Act |
|---|---|---|
| 1 Count | Mandatory minimum of 5 year | Mandatory minimum of 5 years |

22

| 2 Counts | Mandatory minimum of 5 + 25 = 30 years | Mandatory minimum of 5 + 5 = 10 years |
|---|---|---|
| 3 Counts | Mandatory minimum of 5 + 25 + 25 = 55 years | Mandatory minimum of 5 + 5 + 5 = 15 years |

For decades, judges have sentenced first time offenders, who possessed a firearm during a drug trafficking crime or a crime of violence, to serve arduous enhanced sentences to be served back-to-back, under 18 U.S.C. § 924(c), in addition to serving a sentence for the underlying drug trafficking crime or crime of violence. This resulted in an average of 50 years sentence for first time offenders under § 924(c)(1)(C). Section 403 of the First Step Act clarified that these enhanced sentences should only apply to defendants who had prior final conviction under 924(c). However, § 403 specifically provides that it only applies to an offense that was committed before December 21, 2018, if a sentence for the offense has not been imposed as of such date.

Notwithstanding the non-retroactivity of § 403, district courts are now using another provision of the First Step Act, § 603, codified at 18 U.S.C. § 3582(c)(1)(A), to undo the harsh sentences resulting from § 924(c) stacking. Section 603 of the First Step Act amended § 3582(c)(1)(A)(i) to permit the defense to initiate a request for compassionate release based on, among other things, "extraordinary and compelling reasons." This fundamentally altered the compassionate release landscape, which had

23

for more than three decades given BOP unreviewable discretion to file compassionate release motions on behalf of clients. Here are some recent examples of district courts granting motions for compassionate release pursuant to § 3582(c)(1)(A) to alleviate the harsh consequences of § 924(c) stacking:

- *United States v. Yvette Wade*, No. 2:99-cr-257, 2020 WL 1864906, *8 (C.D. Cal. Apr. 13, 2020), Dkt. 637 granting defendant's motion for compassionate release and reducing sentencing of 73 years and 1 month imposed in 1999 to "TIME SERVED, followed by three years of supervised release"); *id.* *4-5 (collecting cases concluding that district courts, in the absence of in the absence of applicable policy statements, courts can determine whether any extraordinary and compelling reasons other than those delineated in USSG § 1B1.13] warrant sentence modification); *id.* *6 (collecting cases where other district courts have held that drastic reductions in section 924(c) stacking under the First Step Act, along with other circumstances, may warrant a reduction of a defendant's sentence).

- *United States v. McPherson*, No. 3:94-cr-05708-RJB, 2020 WL 1862596, *5 (W.D. Wa. Apr. 14, 2020), Dkt. 209 (granting defendant's motion for compassionate release and reducing sentence of 32.6 years imposed in 1995 to time served); *id.* ("In considering the government's argument–that the non-retroactivity law in the First Step Act purposely left this defendant's sentence in place - we need to look at all the laws, including 18 U.S.C. § 3582(c)(1)(A), together. Section 3582 (c)(1)(A) provides a safety valve against what otherwise would be a harsh, unjust, and unfair result stemming from a non-retroactivity clause."). The court's order has an excellent discussion of how and why the Sentencing Commission's Policy Statement in USSG § 1B1.13 (addressing factors court's should consider as "extraordinary and compelling reasons" to support compassionate release) does not limit the court's ability for finding extraordinary and compelling reasons

24

for a sentencing reduction, leaving it to the Court to determine what qualifies, after appropriate analysis." *Id*. *4.

In effect, Section 403 of the First Step Act should dictate a $5 + 5 = 10$ years mandatory sentences (for Counts 2 and 3), for a total sentence of 10 years.

3. <u>Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct</u>

With respect to the need to avoid unwarranted sentencing disparities, Davis urges the Court to consider the sentences of recent compassionate release grants:

i. *United States v. Clark, Case No. 11-CR-30-2-JPS (E.D. Wis. Jul. 23, 2020)*

• Quoting that in *Redd*, the Court evaluated whether extraordinary and compelling reasons existed to reduce the sentence by considering (1) the sentence the defendant originally received compared to the one he would receive today; (2) the disparity between those sentences; and (3) the reason for that disparity. *Redd*, 2020 WL 1248493, at *5. There, the court determined that the disparity was "primarily the result of Congress' conclusion that sentences like [defendant's] are unfair and unnecessary." *Id*. at *6.

ii. *United States v. Brooks, Case No. 07-cr-20047-JES-DGB (C.D. Ill. May. 15, 2020)*

• Quoting that in *Redd*, the district court held "a court may find, independent of any motion, determination or recommendation by the BOP Director, that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in USSG § 1B1.13 cmt. n.1(A)-(C) and that the reasons it has determined in this case constitute

25

> extraordinary and compelling reasons warranting a sentence reduction satisfy any requirement for consistency with any applicable policy statement."

Davis is now, in effect, to be re-sentenced today, after the passage of the First Step Act; and the need to avoid unwarranted sentencing disparities is to be assessed at the time of his sentencing today relative to those comparable offenders who have been sentenced following the passage of the First Step Act and grants of compassionate releases based on the need to avoid unwarranted sentencing disparities, which expressly allowed for the possibility for a sentence reduction based on an individualized assessment of the § 3553(a) factors and other criteria.

Davis essentially argues that the unwarranted sentencing disparity factor must be determined only with reference to those comparably situated defendants who– those being sentenced today under a different sentencing structure and/or received a reduction in sentence based on the need to avoid unwarranted sentencing disparities. Davis' sentence in March 2019 is now disparate relative to Defendant's who were sentenced post-FSA.

See e.g., *United States v. Vazquez-Rivera*, 470 F.3d 443, 449 (1st Cir. 2006) (recognizing that "a district court may consider disparities among co-defendants in determining a sentence"); *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006) ("Although § 3553(a) does not require district courts to consider sentencing disparity

26

among co-defendants, it also does not prohibit them from doing so."); *United States v. Gomez*, 215 F. App'x 200, 202 (4th Cir. 2007) (implying that consideration of co-defendant disparities is allowed, but concluding that Gomez was not similarly situated to the co-defendant); *United States v. Bennett*, 664 F.3d 997, 1015 (5th Cir. 2011) ("[A]voiding unwarranted sentencing disparities among co-defendants is a valid sentencing consideration."), cert. denied, 11-9109, 2012 WL 733887 (Apr. 2, 2012); *United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007) ("A district judge, however, may exercise his or her discretion and determine a defendant's sentence in light of a co-defendant's sentence."); *United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) ("Pulley properly contends that § 3553(a)(6) does not allow unwarranted sentencing disparities between co-defendants." (citing *Statham*, 581 F.3d at 556; *Bartlett*, 567 F.3d at 908–09)); *United States v. Lazenby*, 439 F.3d 928, 933 (8th Cir. 2006) (invalidating a sentence that resulted in unwarranted disparities between the sentences of the defendant and less culpable members of related conspiracies); *United States v. Saeteurn*, 504 F.3d 1175, 1181–83 (9th Cir. 2007) (upholding as a legitimate generalized § 3553(a) consideration the district court's decision to compare defendant with his co-defendants and sentence him in accordance with his role); *United States v. Smart*, 518 F.3d 800, 804 (10th Cir. 2008) ("[A] district court may also properly account for unwarranted disparities between codefendants who are similarly situated,

and...the district court may compare defendants when deciding a sentence."); *United States v. Zavala*, 300 F. App'x 792, 795 (11th Cir. 2008) ("It is not erroneous for the district court to have considered the 'unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct' when the statute specifically mandates such consideration."); *United States v. Mejia*, 597 F.3d 1329, 1344 (D.C. Cir. 2010) (considering and rejecting an argument that a disparity between co-defendants' sentences was unwarranted), cert. denied, 131 S. Ct. 586 (2010).

Under 18 U.S.C. § 3582(c)(2), to modify Davis' sentence, taking into account the advisory nature of the guidelines after *Booker* and the considerations set forth in 18 U.S.C. § 3553(a). The court should find that a sentence of 132 months is sufficient, but not greater than necessary, and accounts for the sentencing factors the court must consider pursuant to 18 U.S.C. § 3553(a), specifically deterrence, protection of the public, and respect for the law.

Accordingly, this motion should be granted.

## VI. CONCLUSION

For the above and foregoing reasons, Davis prays this Court would consider his Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018, based upon the "extraordinary and compelling reasons" in

28

light of Amendment 829, and unwarranted disparity among comparably situated

Defendants who were sentenced today under a different sentencing structure, and

release him to home confinement or hold a hearing as soon as possible.

Respectfully submitted,

Dated: April 7th, 2025

Lashawn Davis

LASHAWN DAVIS
REG. NO. 65520-060
FCI BUTNER LOW
FEDERAL CORR. INSTITUTION
P.O. BOX 999
BUTNER, NC 27509
Appearing *Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on April 7th, 2025, I mailed a true and correct copy of the above and foregoing Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018 was sent via U.S. Mail, postage prepaid, to Scott C. Zarzycki, Assistant U.S. Attorney, Office of the U.S. Attorney - Cleveland, Northern District of Ohio, Ste. 400, 801 West Superior Avenue, Cleveland, OH 44113.

Lashawn Davis

LASHAWN DAVIS

29