**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

FILED
JUL 27 2026
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

| | | |
|---|---|---|
| LASHAWN DAVIS, | ) | |
| | ) | Crim No. 1:18-cr-00184-PAG-1 |
| Movant, | ) | |
| | ) | |
| vs. | ) | **MOTION FOR COMPASSIONATE** |
| | ) | **RELEASE PURSUANT TO** |
| UNITED STATES OF AMERICA, | ) | **18 U.S.C. § 3582(C)(1)(A)** |
| | ) | **AND FIRST STEP ACT OF 2018** |
| Respondent. | ) | |
| | ) | |

COMES Movant, LASHAWN DAVIS ("Davis"), appearing *pro se,* and in support of this memorandum would show as follows:

## I. JURISDICTION

The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582. The scope of a proceeding under 18 U.S.C. § 3582(c)(2) in cases like this one is extremely limited. *Dillon v. United States*, 130 S.Ct. 2683, 2687(2010). It is black-letter law that a federal court generally "may not modify a term of imprisonment once it has been imposed." *Id.* However, Congress has allowed an exception to that rule "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing

Commission." 18 U.S.C. § 3582(c)(2); see also, *Freeman v. United States*, 131 S.Ct. 2685 (2011) (reciting standard for sentence modifications). Such defendants are entitled to move for retroactive modification of their sentences. *Dillon*, 130 S.Ct. at 2690–91.

## II. STATEMENT OF THE CASE

### A. Procedural Background

On April 11, 2018, a grand jury sitting in the United States District Court for the Northern District of Ohio, Eastern Division, returned a four (4) count Indictment charging Davis. See Doc. 13.[1] Count 1 charged Davis with Carjacking, in violation of 18 U.S.C. §§ 2119(1) and 2. *Id.* Counts 2 and 4 charged Davis with Using or Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C.§ 924(c)(1)(A)(ii). *Id.* Counts 3 charged Davis with Armed Bank Robbery, in violation of 18 U.S.C.§§ 2113(a) and (d), and 2. *Id.*

On October 18, 2018, a Plea Hearing was held and Davis entered a plea of guilty on Counts 1, 2, 3, and 4 of the Indictment, pursuant to a written Plea Agreement. See Doc. 21.

On March 7, 2019, Davis was sentenced to a total term of 180 months' imprisonment, 5 years Supervised Release, $1,008.00 Restitution, and a Mandatory

---

[1] "Doc." refers to the Docket Report in the United States District Court for the Northern District of Ohio, Eastern Division, in Criminal No. 1:18-cr-00184-PAG-1, which is immediately followed by the Docket Entry Number.

Special Assessment Fee of $400. See Docs. 33, 34.

On March 15, 2019, Davis timely filed a Notice of Appeal. See Doc. 38.

On November 26, 2019, the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") affirmed Davis' judgment. See Doc. 45.

On February 18, 2020, Davis filed a Motion to Reduce Sentence Pursuant to First Step Act 2018, which was denied on March 16, 2020.

On April 1, 2020, Davis filed a Notice of Appeal re: Order denying his Motion for Reduction of Sentence Per First Step Act of 2018, which was denied on December 1, 2020. See Docs. 46, 48, 49, 62.

On June 30, 2020, Davis filed a Request for Compassionate Release re First Step Act of 2018 (COVID-19), which was denied on November 6, 2020. See Doc. 50.

On November 19, 2020, Davis filed a Notice of Appeal re: denial of his Compassionate Release Motion, which was vacated and remanded for further proceedings. On May 7, 2021, the Sixth Circuit issued a mandate denying his appeal. See Docs. 60, 64, 65.

On July 30, 2021, Davis filed a Motion for Reconsideration of Motion for Compassionate Release re First Step Act of 2018 (COVID-19), which was denied on August 3, 2021. See Docs. 66, 67.

On August 12, 2021, Davis filed a Notice of Appeal re: Motion for

Reconsideration and Order denying Compassionate Release, which the Sixth Circuit denied and affirmed his motions on April 21, 2022. See Docs. 68, 70.

### B. **Statement of the Facts**

#### 1. Offense Conduct

On January 3, 2018, a Glock 27 bearing serial number BEFM972 was purchased by Tyla Spencer ("Spencer") at Cleveland Armory, a sporting goods store in Valley View, OH. Also purchased at the same time was a red laser sight. On or after January 3. 2018, Davis posted a photo to Instagram using account name rgf.shawnn which showed Davis holding two new Glock pistol boxes in what appeared to be a sporting goods store.

On February 4, 2018, a carjacking/aggravated robbery occurred at 1732 Coventry Road, Cleveland Heights, OH, during which a burgundy Hyundai Elantra bearing Ohio registration HUM1555 was taken at gunpoint. The victim described the subjects as two young black males carrying black semi-automatic handguns.

On Saturday, February 1 7, 2018, at approximately 11:30 am, two black males entered the Dollar Bank at 5201 Wilson Mills Road, Richmond Heights, Ohio and robbed the bank at gunpoint stealing approximately $1,008.00 in U.S. currency. The victim teller described the weapon used in the robbery as a grey or black semi-automatic handgun with two "circles" in the area of the muzzle.

Surveillance video obtained from the bank and viewed by Special Agent William L. Hasty ("Hasty") showed a black male wearing a black hoodie and a face covering of some kind, and light colored pants entering the bank with what appeared to be a small handgun drawn.

Employees who were working at the time of the robbery were interviewed and stated the suspects entered the bank yelling and ordering them to not

move and to get on the ground. One employee heard the second robber yell, "you got 5 seconds or I'm going to fucking kill you" before beginning a countdown of "five, four, three." Employees then heard the two robbers run out the door, where employees captured the registration of the getaway vehicle as Ohio HUM1555 and contacted 911. That registration returned to a stolen burgundy Hyundai which had been taken at gunpoint on February 4, 2018 in Cleveland Hts., OH.

On March 6, 2018, during the execution of an arrest warrant targeting Davis at his residence, 1835 Penrose, East Cleveland, OH, a revolver was found in his bedroom in plain view. Following this, the residence was locked down pending application for a search warrant. While that warrant was awaiting signature. Davis volunteered the location of a Glock 27 pistol in his bedroom, secreted inside a stack of laundry next to his bed. Upon executing that search warrant, the above mentioned Glock 27 bearing serial number BEFM972 was recovered in a laundry basket next to the bed as described by Davis. Additionally, a red laser sight was attached at the time of the discovery. Upon its discovery, the weapon's muzzle was pointed at officers, with the muzzle and laser sight both appearing as two circles to the viewer. A stack of fresh $2 bills were also found in Davis' bedroom. A new stack of $2 bills were taken in the bank robbery on February 17, 2008.

During a March 7, 2018 interview of Davis, which was conducted at the Valley View, OH Police Department. Davis confessed on February 17, 2018 the robbery of the Dollar Bank at 5201 Wilson Mills Road, Richmond Heights, Ohio, as well as the armed carjacking of the burgundy Hyundai bearing Ohio registration HHM1555 which occurred on February 4, 2018 in Cleveland Hts., OH.

See Doc. 1-1 at 1-3.

2. Plea Proceeding

On October 18, 2018, a Change of Plea Hearing was held before Judge Patricia

A. Gaughan. Pursuant to a written Plea Agreement [Doc. 21], Davis pleaded guilty to all four counts in the Indictment. The parties made no agreement about the applicable sentencing range or the sentence to be imposed, but agreed on an applicable offense level under the Sentencing Guidelines. Specifically, the parties agreed to a combined offense level of 22 for both the carjacking and bank robbery counts, see USSG § 2B3.1(b)(1), (5), and a 2-level multiple-count adjustment, see USSG § 3D1.4(a), for a Total Offense Level of 24. The government agreed to recommend a 3-level downward adjustment for acceptance of responsibility under USSG § 3E1.1. With respect to the two § 924(c) counts, the parties agreed that the first count carried a 7-year mandatory minimum sentence and the second count carried a 25-year mandatory minimum, both of which must be served consecutively to any sentence imposed on all other counts in the indictment. See 18 U.S.C. § 924(c)(1)(C)(i) (2017) ("In the case of a second or subsequent conviction under this subsection, the person shall . . . be sentenced to a term of imprisonment of not less than 25 years."); 18 U.S.C. § 924(c)(1)(D)(ii) (2017) ("[N]o term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person . . . ."). The agreement stated:

> The parties agree to recommend that the Court impose a sentence within the range specified pursuant to the advisory Sentencing Guidelines in addition to a mandatory consecutive term of 7 years (84 months) on

> Count 2 and a mandatory consecutive term of 25 years (300 months) on Count 4, pursuant to . . . 18 U.S.C. § 924(c)(1)(A)(ii). It is anticipated by the parties that the total guideline sentence would place the defendant in a range of imprisonment first represented in the guidelines at offense level 42 prior to acceptance of responsibility.

Davis waived his right to appeal or collaterally attack his conviction and sentence, but reserved the right to appeal any sentence that exceeded the statutory maximum or "any sentence to the extent it exceed[ed] the maximum of the sentencing imprisonment range determined under the advisory Sentencing Guidelines in accordance with the sentencing stipulations and computations in [the plea] agreement, using the Criminal History Category found by applicable by the Court." The appeal waiver did not preclude Davis from raising claims of ineffective assistance of counsel or prosecutorial misconduct on direct appeal or in a collateral attack. The trial court conducted a change-of-plea hearing and accepted Davis's guilty plea.

3. <u>Prsentence Report Calculations and Recommendations</u>

The PSR calculated a guidelines imprisonment range of 51 to 63 months, based on a Total Offense Level of 24 and a Criminal History Category of I. After the change-of-plea hearing, the First Step Act of 2018 went into effect. Section 403(a) of the Act limited the practice of "stacking" sentences for multiple § 924(c) violations in the same case by striking from § 924(c)(1)(C) "second or subsequent conviction under this subsection" and replacing it with "violation of this subsection that occurs after a

prior conviction under this subsection has become final." Pub. L. No. 115-391, § 403(a), 132 Stat. 5194. In effect, the 25-year mandatory minimum sentence for a subsequent § 924(c) conviction now applies to only "a defendant who violated the subsection after a prior conviction under the subsection had become final." *Cherry v. United States*, No. 4:08CR520, 2019 WL 2411216, at *1 (N.D. Ohio June 7, 2019).

4. Sentencing Proceeding

On March 7, 2019, a Sentencing Hearing was held before Judge Patricia A. Gaughan. See Doc. 33. At the sentencing hearing, the District Court explained that, in light of the First Step Act, the statutory mandatory minimum applicable to both § 924(c) counts was 7 years, to be served consecutively to each other and to all other counts. With respect to the offense level for the carjacking and armed-bank robbery counts, the court agreed with the PSR's calculation and added a 3-level reduction for acceptance of responsibility under § 3E1.1, which resulted in a guidelines range of 37 to 45 months. The court ultimately varied downward from that range and imposed a concurrent sentence of 12 months' imprisonment for the carjacking and robbery convictions and 84 months' imprisonment for each § 924(c) conviction, to be served consecutively to each other and to all other counts, for a total term of imprisonment of 180 months. The court imposed a 5-year term of supervised release. See Doc. 34. The Court also ordered payment of $1,008.00 Restitution, and a Mandatory Special

Assessment Fee of $400. *Id.* Davis timely filed a Notice of Appeal. See Doc. 38.

4. Appellate Proceeding

On appeal, Davis' counsel has filed a brief and a motion to withdraw pursuant to *Anders*. Counsel states that she has examined the record and found no non-frivolous grounds for appeal. Nonetheless, counsel identifies two potential issues for appeal: (1) whether Davis can appeal his conviction and sentence in light of the appeal-waiver provision of the plea agreement; and (2) whether the sentence is reasonable. Davis was notified of his right to respond to counsel's *Anders* brief but has not done so. We find that counsel has filed an adequate *Anders* brief and properly concludes that there are no issues present on the record that would support an appeal. See *Anders*, 386 U.S. at 744. Independent review of the record confirms that there are no issues of arguable merit for appeal. Accordingly, the Sixth Circuit granted counsel's motion to withdraw and affirmed the District Court's judgment. See ROA. 23.[2]

## III. DISCUSSION

As a preliminary matter, Davis respectfully requests that this Court be mindful that courts have a duty to construe *pro se* motions liberally. See *Williams v. Curtin*,

[2] "ROA." refers to the record on appeal in No. 19-3209, which is immediately followed by the page number.

631 F.3d 380, 383 (6th Cir. 2011); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); and *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Davis recognizes that compassionate release under 18 U.S.C. § 3582(c)(1)(A) is limited. It is not a substitute for a direct appeal, a motion under 28 U.S.C. § 2255, or a vehicle for relitigating the validity of a conviction or sentence. The Supreme Court's recent decisions in *Rutherford v. United States* and *Fernandez v. United States* make that point clear. *Rutherford* holds that a nonretroactive change in sentencing law cannot, by itself or in combination with other factors, supply the extraordinary and compelling reason required by § 3582(c)(1)(A). *Fernandez* likewise confirms that compassionate release cannot be used to attack the validity of the conviction itself.

Davis therefore does not ask this Court to use compassionate release as a substitute for *habeas corpus*, nor does he ask the Court to declare his conviction invalid or to grant relief solely because later legal developments may have changed the way some sentencing issues are analyzed today. Instead, Davis seeks relief based on the individualized, present-day circumstances that remain fully cognizable after *Rutherford* and *Fernandez*: the risks created by continued imprisonment, his sustained rehabilitation, his institutional conduct, his reduced danger to the community, and the fact that continued incarceration is no longer necessary to satisfy the purposes of sentencing under 18 U.S.C. § 3553(a).

Compassionate release remains available where a defendant demonstrates extraordinary and compelling personal circumstances and where the § 3553(a) factors support a reduction. That is the case here. Davis has served a substantial portion of a serious sentence. He has matured, completed meaningful programming, maintained institutional employment, addressed substance-abuse issues, and demonstrated that he is no longer the same person who stood before this Court in 2018. His institutional record, when considered together with his rehabilitation, and years already served, further support the conclusion that extraordinary and compelling circumstances exist. Viewed together, these circumstances present the type of individualized case for mercy that § 3582(c)(1)(A) still permits.

## A. Legal Standard After *Rutherford* and *Fernandez*

Section 3582(c)(1)(A) authorizes a district court to reduce a previously imposed sentence where, after considering the applicable factors under 18 U.S.C. § 3553(a), the court finds that extraordinary and compelling reasons warrant a reduction and that any reduction is consistent with applicable policy statements issued by the United States Sentencing Commission.

The Supreme Court has now clarified the limits of that authority. In *Rutherford*, the Court held that a sentencing disparity created by a nonretroactive change in law cannot itself constitute an extraordinary and compelling reason for compassionate

release. The Court reasoned that when Congress changes a sentencing law but chooses not to make that change retroactive, courts may not use compassionate release to override that congressional decision.

*Fernandez* similarly confirms that compassionate release cannot be used to challenge the validity of a conviction. Claims of innocence, trial error, or legal invalidity generally belong in direct appeal or *habeas* proceedings, not in a motion under § 3582(c)(1)(A).

Those limitations do not defeat Davis' motion. Davis' request is not based on an effort to relitigate guilt or to obtain retroactive application of a new sentencing rule. His request is based on who he is today, what has changed during his incarceration, his demonstrated rehabilitation, and whether continued incarceration remains necessary under § 3553(a).

That distinction matters. *Rutherford* and *Fernandez* narrowed the legal-error and nonretroactivity theories of compassionate release, but they did not eliminate compassionate release based on changed personal circumstances, medical hardship, rehabilitation combined with other factors, family circumstances, institutional record, reduced risk, or the totality of a defendant's present condition. Davis' motion should be evaluated under that individualized framework.

The Court's consideration of Davis' motion is also consistent with Sixth Circuit

precedent interpreting the compassionate-release statute and the Sentencing Commission's policy statement. In *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020), the Sixth Circuit held that U.S.S.G. § 1B1.13 was not an applicable, binding policy statement for defendant-filed motions under 18 U.S.C. § 3582(c)(1)(A), but instead served only as persuasive guidance. The court recognized that district courts possess broad discretion to determine what constitutes "extraordinary and compelling reasons" warranting compassionate release. Since *Jones* was decided, however, the Sentencing Commission substantially amended U.S.S.G. § 1B1.13, effective November 1, 2023, expanding the categories of circumstances that may constitute extraordinary and compelling reasons, including certain changes in law and unusually long sentences, and clarifying the analytical framework governing compassionate-release motions. Although the amended policy statement is now applicable to defendant-filed motions, it preserves the district court's responsibility to conduct an individualized assessment of the defendant's circumstances and to determine whether a sentence reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a).

Davis' request is fully consistent with the amended policy statement. He does not seek relief based upon a nonretroactive change in law, nor does he attempt to use compassionate release as a substitute for collateral review. Rather, Davis relies upon the types of individualized circumstances that remain cognizable under both the

amended § 1B1.13 and the Supreme Court's recent decisions in *Rutherford* and *Fernandez*, including his sustained rehabilitation, institutional record, reduced danger to the community, viable release plan, and the totality of his present circumstances. Accordingly, granting relief in this case would be entirely consistent with both *Jones* and the Sentencing Commission's current policy statement.

### B. Davis' Sentencing History and Subsequent Developments Support Relief Under the § 3553(a) Factors

Davis recognizes that compassionate release is not a substitute for direct appeal or collateral review. Accordingly, he does not ask this Court to invalidate his conviction, vacate his sentence, or resolve any legal claim that properly belongs in a proceeding under 28 U.S.C. § 2255. Nor does he contend that subsequent legal developments, standing alone, constitute an extraordinary and compelling reason for relief. *Rutherford* forecloses that argument.

Nevertheless, the Court is not required to ignore the broader context of Davis' sentence when evaluating the factors set forth in 18 U.S.C. § 3553(a). The Supreme Court has repeatedly recognized that sentencing is an individualized process and that courts may consider a wide range of information when exercising sentencing discretion. See *Concepcion v. United States*, 142 S. Ct. 2389, 2396 (2022). Thus, while Davis does not rely upon legal developments as an independent basis for compassionate

release, the Court may consider the circumstances surrounding his sentence as part of the overall determination of whether continued incarceration remains necessary to accomplish the purposes of sentencing.

1. Davis' Youthfulness at the Time of the Offense and Amendment 829 Support Relief Under the § 3553(a) Factors

Amendment 829 to the U.S. Sentencing Guidelines, effective November 1, 2023, introduces significant changes related to youthful offenders, aligning sentencing practices with current neuroscience and social science research on the cognitive development of young adults. Courts now have broader discretion to consider a defendant's age (specifically if they were 25 years old or younger at the time of the offense) as a mitigating factor during sentencing. This change recognizes that individuals in this age range may lack full cognitive development, affecting their impulse control, judgment, and decision-making abilities. The amendment reflects studies showing that the brain's prefrontal cortex, responsible for reasoning and executive functions, continues to mature into the mid-20s. As a result, youthful offenders are seen as more capable of rehabilitation than older defendants. Sentencing courts are now encouraged to impose downward departures from the guideline range for youthful offenders if the defendant's age and immaturity significantly contributed to the offense. Judges may consider the offender's upbringing, environment, and

susceptibility to negative influences at the time of the crime.

Under Amendment 829, Davis' sentence enhancement based on his juvenile criminal history may be inappropriate because (1) the amendment encourages courts to consider youthful offenders' reduced culpability due to their incomplete brain development. Enhancing a sentence based on juvenile offenses contradicts this principle, as those offenses often reflect immaturity and vulnerability to negative influences rather than hardened criminal behavior; and (2) Davis' juvenile record likely reflects offenses committed during a period of developmental immaturity. Under Amendment 829, judges are instructed to view such offenses with caution and consider downward departures rather than automatic enhancements based on those records. In *United States v. Gall*, 552 U.S. 38 (2007), the Supreme Court recognized that youthful defendants possess a heightened capacity for reform. Thus, the same reasoning should apply that Davis' juvenile record should have been viewed as a mitigating factor rather than an aggravating one.

2. Davis' Stacked § 924(c) Sentence No Longer Reflects the Purposes of Sentencing

Section 403 of the Act eliminates the so-called "stacking" of 18 U.S.C. § 924(c)(1)(A) penalties. Section 924(c) provides for various mandatory consecutive

penalties for the possession, use, or discharge of a firearm during the commission of a felony violent or drug offense. However, for a "second or subsequent conviction" of 924(c), the mandatory consecutive penalty increases to 25 years.

Occasionally, the Government charges a defendant with multiple counts of 924(c), which results in each count being sentenced consecutive to each other as well as to the underlying predicate offense. For example, a defendant is charged with two counts of drug trafficking and two counts of 18 U.S.C. § 924(c)(1)(A)(i), which requires a consecutive 5 years' imprisonment to the underlying offense for mere possession of a firearm during the commission of the drug offense. At sentencing, the Court imposes 40 months for the drug trafficking offenses. As a result of the first § 924(c)(1)(A)(i) conviction, the Court must impose a consecutive 60 months (5 years). But what about the second § 924(c)(1)(A)(i) conviction? In such situations, courts have been treating the second count as a "second or subsequent conviction." As such, the 60-month consecutive sentence becomes a 300 month (25 years) consecutive sentence. In our hypothetical, then, the sentencing court would impose a total sentence of 400 months (40+60+300) inasmuch as the second 924(c) count was a "second or subsequent conviction."

Now, under the Act, to avoid such an absurd and draconian result, Congress has clarified that the 25-year mandatory consecutive penalty only applies "after a prior

conviction under this subsection has become final." Thus, the enhanced mandatory consecutive penalty no longer can be applied to multiple counts of 924(c) violations.

In other words, The First Step Act revised section 924(c)(1)(C) by providing that the higher penalty for a "second or subsequent count of conviction" under section 924(c) is triggered only if the defendant has a prior section 924(c) conviction that has become final. In other words, the extreme 25-year recidivism enhancement of 924(c) is now to apply only to actual recidivists.

**Example:** Contemplates five-year mandatory minimum terms for using, carrying, or possessing a firearm in furtherance of a crime of violence or drug trafficking offense. Higher mandatory minimums apply depending on other factors such as whether the firearm was brandished (seven years) and whether the firearm was a machine gun (30 years) among others.

| **924(c) Counts of Conviction in the Same Indictment** | **BEFORE the First Step Act** | **AFTER the First Step Act** |
|---|---|---|
| 1 Count | Mandatory minimum of 5 year | Mandatory minimum of 5 years |
| 2 Counts | Mandatory minimum of 5 + 25 = 30 years | Mandatory minimum of 5 + 5 = 10 years |
| 3 Counts | Mandatory minimum of 5 + 25 + 25 = 55 years | Mandatory minimum of 5 + 5 + 5 = 15 years |

For decades, judges have sentenced first time offenders, who possessed a firearm during a drug trafficking crime or a crime of violence, to serve arduous enhanced sentences to be served back-to-back, under 18 U.S.C. § 924(c), in addition to serving a sentence for the underlying drug trafficking crime or crime of violence. This resulted in an average of 50 years sentence for first time offenders under § 924(c)(1)(C). Section 403 of the First Step Act clarified that these enhanced sentences should only apply to defendants who had prior final conviction under 924(c). However, § 403 specifically provides that it only applies to an offense that was committed before December 21, 2018, if a sentence for the offense has not been imposed as of such date.

Notwithstanding the non-retroactivity of § 403,district courts are now using another provision of the First Step Act, § 603, codified at 18 U.S.C. § 3582(c)(1)(A), to undo the harsh sentences resulting from § 924(c) stacking. Section 603 of the First Step Act amended § 3582(c)(1)(A)(i) to permit the defense to initiate a request for compassionate release based on, among other things, "extraordinary and compelling reasons." This fundamentally altered the compassionate release landscape, which had for more than three decades given BOP unreviewable discretion to file compassionate release motions on behalf of clients. Here are some recent examples of district courts granting motions for compassionate release pursuant to § 3582(c)(1)(A) to alleviate the

harsh consequences of § 924(c) stacking:

- *United States v. Yvette Wade*, No. 2:99-cr-257, 2020 WL 1864906, *8 (C.D. Cal. Apr. 13, 2020), Dkt. 637 granting defendant's motion for compassionate release and reducing sentencing of 73 years and 1 month imposed in 1999 to "TIME SERVED, followed by three years of supervised release"); *id.* *4-5 (collecting cases concluding that district courts, in the absence of in the absence of applicable policy statements, courts can determine whether any extraordinary and compelling reasons other than those delineated in USSG § 1B1.13] warrant sentence modification); *id.* *6 (collecting cases where other district courts have held that drastic reductions in section 924(c) stacking under the First Step Act, along with other circumstances, may warrant a reduction of a defendant's sentence).

- *United States v. McPherson*, No. 3:94-cr-05708-RJB, 2020 WL 1862596, *5 (W.D. Wa. Apr. 14, 2020), Dkt. 209 (granting defendant's motion for compassionate release and reducing sentence of 32.6 years imposed in 1995 to time served); *id.* ("In considering the government's argument–that the non-retroactivity law in the First Step Act purposely left this defendant's sentence in place - we need to look at all the laws, including 18 U.S.C. § 3582(c)(1)(A), together. Section 3582 (c)(1)(A) provides a safety valve against what otherwise would be a harsh, unjust, and unfair result stemming from a non-retroactivity clause."). The court's order has an excellent discussion of how and why the Sentencing Commission's Policy Statement in USSG § 1B1.13 (addressing factors court's should consider as "extraordinary and compelling reasons" to support compassionate release) does not limit the court's ability for finding extraordinary and compelling reasons for a sentencing reduction, leaving it to the Court to determine what qualifies, after appropriate analysis." *Id.* *4.

In effect, Section 403 of the First Step Act should dictate a 5 + 5 = 10 years mandatory sentences (for Counts 2 and 3), for a total sentence of 10 years.

## C. The Factors Set Forth in 18 U.S.C. § 3553(a) Strongly Favor a Reduction of Sentence

Even where extraordinary and compelling reasons exist, a district court must determine whether a sentence reduction is consistent with the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Those factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, the need to avoid unwarranted disparities, and the need to provide medical care in the most effective manner. See 18 U.S.C. § 3553(a).

When those factors are evaluated based upon Davis' present circumstances rather than solely the facts that existed at sentencing, they strongly support a reduction of sentence.

The Supreme Court has made clear that sentencing courts possess broad discretion to consider intervening developments and post-sentencing conduct when exercising sentencing authority. See *Concepcion v. United States*, 142 S. Ct. 2389, 2396 (2022). Accordingly, the Court's analysis is not frozen in time as of March 2019. Rather, the Court may consider the substantial changes that have occurred during the many years Davis has spent in federal custody.

The Court begins with the nature and circumstances of the offense. Davis acknowledges that the offense conduct was serious. Davis was convicted of using or

carrying, and brandishing a firearm under 18 U.S.C. § 924(c). Nothing in this motion seeks to minimize the seriousness of those offenses or the harm they posed. Respect for the law requires acknowledgment that his conduct warranted a substantial sentence. The issue presented here is not whether punishment was appropriate, but whether the extraordinary length of the stacked § 924(c) sentence continues to be necessary in light of subsequent legal developments, Davis' rehabilitation, and the sentencing factors set forth in 18 U.S.C. § 3553(a).

The history and characteristics of the defendant likewise favor relief. Section 3553(a) requires the Court to consider not only who Davis was at sentencing, but who he is today. The record demonstrates substantial personal growth during his incarceration. Davis has pursued educational opportunities, participated in cognitive-behavioral programming, completed substance-abuse treatment, maintained institutional employment, and consistently worked toward self-improvement. These accomplishments were not achieved over a matter of weeks or months. They represent years of sustained effort and personal commitment.

The Court may also consider the significant punishment Davis has already endured. Davis has spent more than eight years in federal custody. Those years have not been symbolic. They have involved separation from family, loss of freedom, restricted opportunities, and the daily realities of incarceration. The sentence has

already achieved substantial punitive effect.

Importantly, the need for specific deterrence has been largely satisfied. Davis has experienced firsthand the consequences of his criminal conduct. The lengthy period of imprisonment already served has sent a powerful deterrent message both to Davis and to others who may contemplate similar conduct. Additional years of incarceration are unlikely to produce any meaningful incremental deterrent effect beyond that already achieved.

Likewise, the need to protect the public has been significantly reduced. As discussed above, Davis has demonstrated through his conduct, programming, treatment participation, and institutional adjustment that he no longer presents the same risk that existed at the time of sentencing. The record before the Court reflects maturity, accountability, and a commitment to lawful conduct rather than continued criminal behavior.

Indeed, one of the central questions presented by § 3553(a) is whether the remaining years of imprisonment continue to serve a meaningful purpose. Davis respectfully submits that they do not. The goals of punishment, deterrence, protection of the public, and respect for the law have already been substantially achieved. Continuing incarceration despite Davis' rehabilitation, stacked 924(c) sentencing, educational accomplishments, and reduced recidivism risk risks transforming a

sentence that was once appropriate into one that is greater than necessary to accomplish the statutory purposes of sentencing.

The Court should also consider that any reduction of sentence would not occur in a vacuum. Davis would remain subject to a term of supervised release and any additional conditions the Court deems appropriate. Those conditions would provide a structured framework for reintegration, accountability, treatment, and monitoring while simultaneously protecting the public.

Finally, the overarching command of § 3553(a) is that a sentence must be sufficient, but not greater than necessary, to accomplish the purposes of federal sentencing. That principle is commonly referred to as the "parsimony principle" and remains the guiding directive of federal sentencing law. When Davis' present circumstances are considered as a whole—including his stacked firearm sentence, remarkable rehabilitation, institutional record, maturity, reduced danger to the community, substantial time already served, and the significant punitive effect of nearly eight years of incarceration—the continued service of the remainder of his sentence is greater than necessary to accomplish the purposes of sentencing.

The Court is not required to ignore the profound changes that have occurred during Davis' incarceration. As the Supreme Court recognized in *Pepper v. United States*, 562 U.S. 476, 492 (2011), evidence of post-sentencing rehabilitation provides

the most current and accurate picture of a defendant's history and characteristics. The record before this Court demonstrates that Davis has used nearly eight years of incarceration to educate himself, address substance-abuse issues, improve his decision-making, maintain institutional employment, and prepare for a law-abiding future. Those developments are directly relevant to the Court's determination of what sentence is sufficient, but not greater than necessary, under § 3553(a).

For all of these reasons, the factors set forth in 18 U.S.C. § 3553(a) strongly favor a reduction of sentence and support the exercise of this Court's discretion under 18 U.S.C. § 3582(c)(1)(A).

## VI. CONCLUSION

Compassionate release remains an extraordinary remedy reserved for extraordinary cases. Davis respectfully submits that his case is one of them.

This motion does not ask the Court to revisit the validity of Davis' conviction, relitigate issues previously decided, or circumvent the limitations governing collateral review. Nor does Davis seeks relief based solely upon a change in law or a sentencing disparity. Rather, Davis asks this Court to evaluate the person he is today.

The record demonstrates that Davis suffers from lenghty sentence. It further demonstrates years of meaningful rehabilitation, educational achievement, substance-abuse treatment, institutional employment, personal growth, and positive

adjustment to incarceration. The evidence before the Court establishes that Davis has accepted responsibility for his conduct, used his incarceration productively, and worked diligently to prepare himself for a law-abiding future.

Davis has now served a substantial term of imprisonment. The goals of punishment, deterrence, protection of the public, and respect for the law have been achieved. Continued incarceration is not necessary to protect the community, nor is it necessary to accomplish the purposes of sentencing. To the contrary, requiring Davis to continue serving the remainder of his sentence despite his demonstrated rehabilitation, and reduced risk of recidivism would result in a sentence that is greater than necessary to satisfy the objectives of 18 U.S.C. § 3553(a).

Federal sentencing is intended to punish wrongdoing, but it is also intended to recognize genuine transformation when it occurs. The compassionate-release statute reflects Congress' judgment that, in rare and compelling cases, mercy and justice may ultimately point in the same direction. Davis respectfully submits that this is such a case.

After considering the totality of the circumstances, including Davis' criminal history as a youth offender, rehabilitation, institutional record, sentencing history, diminished danger to the community, and the applicable factors under 18 U.S.C. § 3553(a), this Court should exercise its discretion under 18 U.S.C. § 3582(c)(1)(A) and

reduce Davis' sentence to 132 months, or alternatively impose such reduced sentence as the Court deems just and appropriate, followed by the previously imposed term of supervised release and any additional conditions deemed necessary to protect the public and facilitate Davis' successful reentry into society.

WHEREFORE, Defendant Lashawn Davis, respectfully requests that this Court grant his Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A), reduce his sentence accordingly, and grant such further relief as the Court deems just and proper.

Respectfully submitted,

Dated: July 20th, 2026

Lashawn Davis

LASHAWN DAVIS
REG. NO. 65520-060
FCI BUTNER LOW
FEDERAL CORR. INSTITUTION

P.O. BOX 999
BUTNER, NC 27509
Appearing *Pro Se*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20th, 2026, I mailed a true and correct copy of the above and foregoing Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018 was sent via U.S. Mail, postage prepaid, to Scott C. Zarzycki, Assistant U.S. Attorney, Office of the U.S. Attorney - Cleveland, Northern District of Ohio, Ste. 400, 801 West Superior Avenue, Cleveland, OH 44113.

Lashawn Davis
LASHAWN DAVIS